IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID A. POLLACK,             )
    Plaintiff              )
                                )
         v.              )     2:10-CV-1621
                                )
COMMISSIONER OF SOCIAL        )
SECURITY,                     )
    Defendant.             )

MEMORANDUM and ORDER

Mitchell, M.J.:

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion (Docket No.10) will be denied; the defendant's motion (Docket No.12) will be granted and the decision of the Commissioner will be affirmed.

On December 8, 2010, David A. Pollack, by his counsel, filed a complaint pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§405(g) and 1383(c)(3) for review of the Commissioner's final determination disallowing his claim for a period of disability or for disability insurance benefits and supplemental security income benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423 and 1381 cf.

The plaintiff filed an application for disability and supplemental security income benefits on April 4, 2008 alleging that he had been disabled since December 31, 1996    (R.93-97). Benefits were denied on August 5, 2008 (R.64-72).    On October 2, 2008, the plaintiff requested a hearing (R.76-77), and pursuant to that request a hearing was conducted on January 20, 2010 (R.26-41).    In a decision filed on February 4, 2010, an Administrative Law Judge denied

benefits (R.6-25). On April 13, 2010, the plaintiff requested reconsideration of this determination (R.4), and upon reconsideration, and in a decision dated October 18, 2010, the Appeals Council affirmed the prior decision (R.1-3). The instant complaint was filed on December 8, 2010.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008). The court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999).

Presently before the Court for resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff is not disabled within the meaning of the Act.

At the hearing held on January 20, 2010 (R.26-41), the plaintiff appeared with counsel (R.38) and testified that he completed high school although he was in learning disabled classes for math and reading (R.31,32,38); that he lives alone (R.29) and that he worked as a supermarket bagger and in his father's household goods business (R.33).

The plaintiff also testified that he takes long walks during the day but occasionally experiences shortness of breath due to his asthma (R.29-30); that he watches television (R.31); that he takes medication for high blood pressure and a blood thinner (R.34) and that he often does not feel like doing anything (R.35-36).

At the hearing a vocational expert was called upon to testify (R.38-40). The witness testified that based on the plaintiff's testimony he could not be employed (R.38). However, when asked to assume an individual who could perform light work with a sit/stand option there were a large number of jobs such an individual could engage in (R.38-39). The witness also testified that if such an individual had to elevate his legs to ninety degrees for two hours during the work day, he would not be employable (R.39-40).

The issue before the Court is whether or not the decision of the Commissioner is supported by substantial evidence.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.    For purposes of the preceding sentence ... "work which exists in the national economy" means work which

3

exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. Section 423(d)(3).   These provisions are also applied for purposes of establishing a period of disability.   42 U.S.C. Section 416(i)(2)(A).

It is provided in 42 U.S.C. Section 1382c(a)(3) that:

(A)... an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.   For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

* * *

(D) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

It is also provided that:

Notwithstanding the provisions of subparagraphs (A) through (E), an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under

4

subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined.

42 U.S.C. Section 1382c(3)(F).

Pursuant to the authorization contained in 42 U.S.C. Section 1382c(3)(D), the Commissioner has promulgated certain regulations for the implementation of the Supplemental Security Income Program. While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff is not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed by the Commissioner.

In a report of a psychological evaluation conducted on August 3, 1978, an inability to listen to and follow directions was noted. The plaintiff was said to have at least average ability; to be functioning below age level and to have a learning problem (R.155-156).

The records from the Penn-Trafford school district indicate that the plaintiff was to engage in special educational classes twenty-five percent of the time (R.142-154).

In a report of a psychological evaluation conducted on October 29, 1990 a diagnosis of organic mental disorder, borderline intelligence and expressive language disorder was made. The plaintiff's vocational rehabilitation potential was noted as "fairly good" (R.157-165).

The plaintiff last met the special earnings requirements of the Social Security Act on December 31, 1996 (R.11).

The plaintiff was diagnosed with acute bronchitis on February 28, 2008 (R.166).

The plaintiff was hospitalized at Jefferson Regional Medical Center from March 12, 2008 through March 28, 2008 for pulmonary emboli and uncontrolled hypertension. Possible bilateral femoral deep vein thromboses were noted. He was treated with medication (R.167-223).

In a report of a follow-up visit on April 11, 2008, it was indicated that the plaintiff feels "fine" with no difficulty walking on the level. His medication was continued (R.226).

In a report of a follow-up visit on May 13, 2008, it was noted that the plaintiff had difficulty walking up a hill but no problems walking on the level. He was reported to be doing well on his medication (R.224).

In a report of an examination conducted on July 2, 2008 deep vain thrombosis and pulmonary emboli, hypertension, and obesity were diagnosed. The plaintiff was continued on his medication. In a residual functional capacity report, it is noted that the plaintiff could stand and walk between two and six hours, sit up to six hours and occasionally lift up to ten pounds (R.229-235).

A residual functional assessment completed on July 21, 2008 noted that the plaintiff did not have any exertional limitations or any other limitations (R.236-241).

In another residual functional capacity report completed on July 21, 2008 it is indicated that the plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds and stand, sit or walk for about six hours. No other limitations were noted (R.242-248).

In a report of a psychological evaluation conducted on July 23, 2008, Lanny Detore, Ed.D. diagnosed a history of a learning disorder, borderline intellectual functioning and no severe emotional disorder. The plaintiff was living independently, had no social problems and was said to be capable of performing simple laboring jobs (R.249-254).

In a report of a mental residual functional capacity assessment completed on August 4, 2008, it is indicated that the plaintiff was able to meet the mental demands of competitive work on a sustained basis. It was further noted that the plaintiff had a history of a learning disorder, organic mental disorder, an expressive language disorder and borderline intellectual functioning. The only limitations noted were in maintaining concentration, persistence or pace (R.255-272).

In a report of testing performed on March 11, 2009 it is noted that the plaintiff's pulmonary systolic pressure appeared to have improved (R.273-277).

A myocardial perfusion scan performed on March 11, 2009 was negative for significant ischemia and infarction. An adenosine stress test was interpreted as poor for exercise tolerance; it was suggested that a diuretic be prescribed for blood pressure control (R.304-308).

The plaintiff was routinely treated on a quarterly basis by Dr. Lynn Potts between April 11, 2008 and August 2009 for follow-up treatment for hypertension, pulmonary embolism, sleep apnea, edema and abnormal weight gain. No problems were noted. Medication was prescribed. The doctor indicated that the plaintiff could sit for two hours at one time, stand for about thirty minutes, and stand or walk for less than two hours. It was also noted that the plaintiff could frequently lift up to ten pounds and occasionally lift up to twenty pounds (R.278-303).

The relevant regulations require explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. These regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe,

7

then it must be determined whether he/she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he/she can do his/her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he/she can exert in engaging in work activity), and if his/her impairment enables him/her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded:

The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 1996. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

* * *

The claimant has the following severe impairments: hypertension, obesity, bilateral pulmonary embolism/deep venous thrombosis (DVT), learning disorder, organic mental disorder, NOS, borderline intellectual functioning, and expressive language disorder...

[O]besity may have an adverse impact on co-existing impairments... These considerations have been taken into account in reaching the conclusions herein.

The undersigned has also evaluated the claimant's hypertension, bilateral pulmonary embolism/deep venous thrombosis...    The findings required by [the] listings are not present in this record. No examining source has mentioned listing level severity. Claimant is prescribed medication for these conditions and they appear manageable with medication...

In terms of the claimant's mental impairments, learning disorder/organic mental disorder NOS, borderline intellectual functioning, and expressive language disorder, the claimant's impairments do not meet or medically equal the requirements of listings 12.00, Mental Disorder, specifically 12.02 (Organic Mental Disorders) or 12.05 (Mental Retardation). In making this finding, the undersigned has considered whether the "paragraph B" criteria ("paragraph D" criteria of listing 12.05) are satisfied. To satisfy the "paragraph B" criteria ("paragraph D" criteria of listing 12.05), the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. The claimant has lived independently and has managed his independent living the past 15 years. He was neat and clean in appearance.

In social functioning, the claimant has mild difficulties.    Clearly, the claimant has some functioning. A consultative examiner reported that socially, the claimant was very congenial, outgoing, and personable, and appears to have no problem socially interacting.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant has reported difficulty with concentration and focusing.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation. The claimant has no history of mental health treatment.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria ("paragraph D" criteria listing 12.05) are not satisfied...

Turning back to listing 12.05, its "paragraph B" criteria are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less.

Finally, the "paragraph C and D" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function...

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work...

At the hearing, the claimant testified that he lives alone. During the day, he walks to the mall by himself and will walk around about 5-10 minutes before having to catch his breath. The mall is a couple miles away. When he gets short of breath his throat gets tight and this happens usually two times a day. He also watches television or lies around. The claimant testified that he had no problems in school he was just in some learning support classes for math and reading. He was also in a vocational training program for plumbing in high school but he did not take the plumbing classes seriously. With regard to his work activity, he worked for his father's company. He also worked as a bagger at Giant Eagle but could not do this job now because of asthma and shortness of breath. He said the job ended with his father because of high blood pressure and risk of cutting himself and bleeding to death because of blood clot issues... He testified that one doctor said he could not lift 10 pounds. He has had no issues of showing up on time for work. He has had good and bad days. He has no difficulty reaching overhead. He has clots in his legs and has to elevate his legs up every day for part of the day, for a few hours. The claimant testified that he tried to work for his father a few weeks ago and could not do it because of shortness of breath.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ... residual functional capacity assessment.

* * *

The undersigned has considered the opinions and findings of Dr. Dobkin. The residual functional capacity assessment is given little weight because it is not consistent with the medical evidence of record as a whole.

* * *

The undersigned has considered the opinion and findings of Dr. Potts... and concurs that the claimant is capable of performing light level work activity because his assessment is well supported by the evidence of record.

* * *

[T]he claimant has alleged disability due to blood clots in the legs and lungs, a learning disability, and hypertension as well as emotional and concentration problems. The claimant has alleged an onset date of December 31, 1996. He reported that he stopped working on March 3, 2008. The date last insured is December 31, 1996. The medical evidence shows that in terms of the claimant's impairments, there is no significant medical history before December 31, 1996, the date last insured and the alleged onset date. There is inadequate evidence in the record to address credibility prior to the date last insured. The medical evidence of record does not begin until after March 2008. In March 2008, the claimant was hospitalized and treated for a massive pulmonary embolism and uncontrolled hypertension. In July 2009, a consultative examiner reported that the claimant was on Coumadin for six months for DVT/pulmonary emboli; that he needed better control of his hypertension but right now he is on Norvasc; and that he needs to lose weight. The examiner also noted [he] had a history of a fractured left ankle that appears to be well. Medical records from claimant's treating physician, Dr. Potts, from April 2008 to August 2009, showed follow up care for diagnoses of pulmonary embolism/DVT and hypertension. The evidence shows that the claimant has received various forms of treatment for the alleged symptoms, but not before December 31, 1996. The record also reveals the treatment has generally been successful in controlling those symptoms. In fact, the claimant's own treating physician, Dr. Potts opined that the claimant is capable of performing work activity at the light exertional level with environmental restrictions.

* * *

Overall, the evidence indicates that the mental impairment in itself is not so severe as to prevent work in unskilled settings.    Considering the work history and apparent validity of results obtained in IQ testing, there is no apparent reason that functioning at the date last insured of December 31, 1996, would have been different than currently. The residual capacity established herein, which provides for simple, routine, repetitive tasks accommodates all credible limitations established on this record, and the jobs cited by the vocational expert are unskilled.

* * *

Based on the application for a period of disability and disability insurance benefits filed on March 20, 2008, the claimant is not disabled under sections 216(I) and 223(d) of the Social Security Act (R.9-22).

The record demonstrates that the plaintiff has a low IQ but not a disabling one. In addition, his activities of daily living do not support any finding of disability. He lives alone, attends to his own needs, functions in social settings but has moderate limitations in concentration, persistence and pace. Additionally, no severe mental findings have been demonstrated prior to the date he was last insured and when he alleged the onset of disability, i.e., December 31, 1996.

As to his physical ailments, there is nothing in the record to support a conclusion that the plaintiff suffered from any physical limitations prior to December 31, 1996. Rather the record demonstrates that his serious medical problems arose in 2008. However, his treating physician reported as recently as August 2009, that the plaintiff was able to engage in gainful employment.

The only contrary evidence appears to be the residual functional capacity evaluation of Dr. Dobkin (R.229-235) which the Commissioner rejected as unsupported by the record. Since the Commissioner is charged with making determinations of credibility, this was a sustainable conclusion. Diaz v. Commissioner, 577 F.3d 500, 506 (3d Cir.2009).

Thus, the record clearly supports the conclusion that the plaintiff failed to meet the requirements for an award of benefits on the date he was last insured, December 31, 1996, and additionally that at the time of the decision, February 4, 2010, the plaintiff was not disabled.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. Azur v. Chase, 601F.3d 212 (3d Cir. 2010). In the instant case, there are no material factual issues in dispute, the decision of the

Commissioner is supported by substantial evidence, and judgment should be entered for the defendant and against the plaintiff. For this reason, the plaintiff's motion for summary judgment will be denied; the defendant's motion for summary judgment will be granted, and the decision of the Commissioner will be affirmed.

An appropriate Order will be entered.

ORDER

AND NOW, this 16th day of June, 2011 for the reasons set forth in the foregoing Memorandum, the plaintiff's Motion for Summary Judgment (Docket No.10) is denied; the defendant's Motion for Summary Judgment (Docket No.12) is granted, and the decision of the Commissioner is affirmed.


s/ Robert C. Mitchell
United States Magistrate Judge